Next case please. Mr. Good morning. The First Amendment is designed in part to prevent the government from establishing one. Because this case can be decided based on neutral tort principles, the First Amendment does not take away jurisdiction from the court and the trial court's ruling on the motion for summary judgment should be reversed. I want to talk a little bit about the facts of the case and then about the applicable law. Doug West, who is a plaintiff, was a treasurer at the Mount Calvary Church in Galesburg from 1993 to the year 2000. The pastor, Joseph Cassady, had exhibited a pattern of false accusations towards members of the church. He accused one member, Cindy Drasites, of breaking into his office and stealing a file. The church and the Senate, through the district, were aware of the accusations that the minister had been making false accusations about ministers as early as May 2000. In July of 2000, the pastor accused Doug West of lying and stealing. Soon after this, in August 2000, Doug West had a stroke. The plaintiff ultimately filed a suit. The counts that we're here about today would be a negligent retention count against Mount Calvary Church, intentional infliction of distress against both Mount Calvary and John Cassady individually, and then a negligent retention claim against the Senate, the Missouri Senate. The documents show that the Senate itself, in some of their own documents, recognized a neutral principles of law approach, and that they recognized that the court, or the, well, the church, would be subject to the court's jurisdiction for lander, slyble, slyble and lander, how about that? How about if I try it again? Slander and libel. What I want to talk about is a little bit about the law. The first thing we start out with is the First Amendment, which states Congress shall make no law establishing a religion or prohibiting free exercise of a religion. The next case I want to look at is Van Horn, which is just an example of what we would need to prove in negligent retention. And to prove that case, we need to show that the employer knew, or should have known, that an employee had a particular unfitness so as to create a danger of harm to others. The second thing we need to prove is that such unfitness was known or should have been known to the employer. And the third thing is that this unfitness caused an injury to the plaintiff. West has a burden of proving these, these elements, but none of these elements require the court to get into issues of doctrine or policy of the church, they can all be decided based simply on neutral tort principles. And the two cases I wanted to point the court's attention to are both third district cases decided within the last few years. One is soft check, and in that case, the defendants claimed the First Amendment protection took away jurisdiction from the court and the third district denied that. The court noted in particular that there was nowhere in the complaint where the court was asked to pass judgment on church doctrine. Similarly, those three elements of what we need to prove from Van Horn, you don't need to address church doctrine to make a decision or a ruling in this case. Soft check relied in part on a case called a motto, and in that case, they state when a doctrinal controversy is not involved, the First Amendment does not require judicial deference to a church. They adopted that neutral, neutral tort principle doctrine. Jenkins is a third district case from 2005. It states that courts can resolve disputes that arise in church setting if the dispute does not require determination of doctrinal issues. It's not the intent of the First Amendment that civil rights are unenforceable in a civil court just because a party might be a minister. The threshold question is whether a claim can be resolved without inquiring into religious doctrine. The defamation claim issue in that particular case was sent down to the trial court. There was an issue there in that case also arguing about an arbitration clause, which we don't have before us in this case. But the appellate court sent it back to the trial court with the instruction that if the arbitration comes back to the trial court, they're supposed to make a determination as to whether the remarks that were the basis of the cause of action fell outside of ecclesiastical concern. In this case, there's never been an argument by any of the defendants or any evidence by any of the defendants that it's either the Mount Calvary Lutheran church doctrine or the synod's doctrine that they believe in a pastor making false accusations of stealing or lying against anybody, a parishioners or anybody. The court simply doesn't need to get into church doctrine to make the decision. It can be based on neutral court principles. In the trial court, and again in the briefs here, the appellees, the church and the minister have argued, well, we need to figure out whether Doug West actions were sinful or not. No, that's not one of the elements in Van de Horne. That's not anything we have to prove. That's not anything we want to even talk about. We want to address neutral court principles. They argue that so then they can sort of dovetail to some other decisions. I think Thomas was the name of one of them, where there was an issue in a, it was a Jewish church or synagogue and they were, the plaintiff claimed that Thomas versus forced, I guess is the case. There was allegations in the complaint that the plaintiff was falsely accused of being an infidel or a scofflaw. And the appellate court in that case found that they needed to address Jewish law to determine if in fact he was or wasn't an infidel as defined in their judicial law or in their Jewish law. We don't have that in our case. He's accused of, West is accused of lying and stealing. We don't need to look at Lutheran doctrine. I mean, your, your client, Mr. West alleges that Cassidy falsely accused him of un-Christian behavior. And I, I mean, I see that in the complaint. Isn't that getting into what the church finds to be un-Christian behavior? I think that if, I, I think that, that admittedly, if, if that's in the complaint, it must be, you must have just read it. It's been, I, that is not what we need to prove for our cause of action. We would likely I'd assume we could address that in a motion eliminated beforehand. I don't want to steer in that direction. I just want to be addressing, like I say, if you look in our complaint, he's got a history, a pattern of falsely accusing parishioners. And in this case, he falsely accused my client of lying and of stealing. And that's where I want to address. Just go down the van horn. What are the elements in negligent retention? And that by itself does not bar the court. I mean, if we were trying to get, let's say we were trying to make the court make a declaratory ruling that my client was not sinful, or that my client was not Christian-like, or if we had based that as the reason why he was injured, then we, I would agree with that. But if it's lying and stealing, which we have evidence of that, and we have the elements of a history of false accusations, the court should be able to address that based on neutral tort principles. Did the members of the church give the authority for those kinds of decisions to be made? The members of the church, I'm sorry, I don't understand. Did the members of the church agree that Mr. Cassidy had the right or the authority to make the kinds of decisions and pronouncements that you're talking about here? I don't believe we've really, I mean, there was no discussion before he made the statements that you can go ahead and make this, if that's what you're asking, if that was, if I understand your question in that way. He made the statements, some of them were in a letter to Mr. West, and some of them were in a council meeting. And I don't believe there was any discussion beforehand about, well, I'm going to go ahead and make this announcement or make these accusations about Mr. West, if that's answering your question. What was the court's basis for allowing summary judgment? Wasn't it that it was just barred based on the First Amendment? Yeah, they're saying that we couldn't- So the court didn't examine the merits based on undisputed facts or anything like that? No, and there wasn't any, it was the First Amendment. There's also, and I'll touch about that briefly, there's also an argument, about a statute of limitations on defamation, and we never alleged any defamation in any of the elements of our claim. There's also an argument that was brought up by the Senate in regards to whether they had the authority to control Mr. West. So we're really looking at this issue in a narrow light, and that is whether this action is barred by the First Amendment. That was what the ruling was in the trial court, was solely based on the First Amendment. And the court didn't think that it would be able to address it without getting into church doctrine, and that's not exact wording of what the judge said, but that was, I think, the intent of the ruling, or what he said. And I believe that's incorrect. I believe the court can address this based on neutral tort principles, and it doesn't need to get into church doctrine to make a decision. Does your complaint contest the punishment that was rendered in terms of not being allowed to- No, there's some, and that was in the letter that he wrote, initially, before we got into the litigation. No, we're not asking, I think there was something, like having the Holy Sacrament or being able to have communion, that's not at all alleged in our complaint, and we're not asking for any relief, and that would be a classic example of where the court should stay out of that. There are two counts that were not challenged, and that was four and five. Yeah, that was a separate, later on the head elder accused, and I haven't read that part of the complaint for a while, but I think the head elder essentially claimed Mr. West misappropriated funds about a year later. Thirty-six thousand. Yeah, and those counts, I believe, are based on defamation as opposed to negligent retention. And those are not at issue. Those are not at issue in the trial court's ruling or before us today. There's a 304A ruling a while after the motion for summary judgment, which brought us here. So, specifically, the counts two and three that are directed against the pastor and the church, what do you allege factually? Okay. We allege that, well, I think it's one is negligent retention. I think two and three are intentional emotional distress, intentional infliction of emotional distress. And I believe that what we allege for the negligent retention, which is one and six, one's against Calvary and six is against the Synod, we allege that they knew that they had a pastor that was making false accusations about members, that, in fact, that was exactly the risk that they had with Mr. West. They left him there or with Mr. Cassidy. Mr. Cassidy did then falsely accuse our client. Counts two and three go to falsehoods by Cassidy and then the church. What are the falsehoods alleged in counts two and three? I believe that it is for sure lying that is in the letter, and I do believe that Mr. Robertson is collected. I don't believe that we had an allegation of stealing in the actual complaint, although I think it was very clear in the deposition of Mr. West when he was asked what was going on with the church at or about the time that you suffered your stroke, he said that was within two weeks of when the pastor stated that I had stolen money from the church. My recollection is that in count two you're alleging that Cassidy engaged in extreme and outrageous behavior and constituted an abuse of power or authority. Yeah, that's the intentional infliction ones, two and three are the... So how can you, how could a trial court address abuse of power or authority without getting into church doctrine when it says that their authority is a pastor? Well, I think that this is, and I think it's Duncan as a second district case that it talks about, and you review these cases right before all arguments, trying to remember it all, and I thought they did a real nice analysis of a case out of Massachusetts, and I don't remember the case. I'll just wait two minutes. Okay. But in the case they talk about the First Amendment, and it sort of has two different things. One, it can't address your freedom to believe. You can believe whatever you want for religion. Or your power to act. Your power to act can be controlled by the court. And it is those actions, if there are certain actions that a person does, regardless of what they say the reason why or the basis of the belief they have, I believe the court can step in and say that that action... Thank you for asking that question, I appreciate it. Does that make sense? It does make sense. Okay. All right. Briefly, because my time is about up, I will also address the issue in regards to control. I think that that was brought up by the Senate in their brief. If you look at the Senate's own constitutions and bylaws, the district is part of the Senate. The district especially, the president of the district has supervisory authority over the ministers inside the district. That president is acting as a representative of the Senate. They have the power and by their own testimony of Reverend Reimitz, who is also an employee of the district, they have in the past let ministers go. I believe they do have authority. At a minimum, there is a question of fact that would bar a motion for summary judgment on the issue of control. Are there any questions? Thank you, Mr. Ren. Mr. Robertson? Good morning. Good morning, Your Honors. May it please the Court, Counsel. First of all, there's not much issue about what the legal precedents say. In our brief, we cite a number of cases in Illinois and out of Illinois. The courts don't get involved in religious discipline. They don't get involved in issues of religious employment. Mr. Ren assumes in his brief, and he assumes in his argument, that everything he alleged is true. This case is not here on a motion to dismiss. This case is here on the record on a motion for summary judgment. The problem with the plaintiff's position is that the plaintiff ignores the fact that the record as it was developed, documentary and testimonial, doesn't support the allegations of the complaint. After a careful review, and I always have real concern with reply briefs, especially when in the appellate, because you don't get to address those in writing. So I'll just say our brief says what it says. But I think when the Court analyzes the record in this case, you're going to see that Mr. Ren really expects you to do three things. There are three things he wants you to rewrite in this record. Three things that you don't have the jurisdiction to rewrite. The first of those is the Holy Bible. The second of those is the deposition testimony, and the third of those are the complaints that he filed in the case. So I'll just try and very briefly explain what I mean by that. Mr. West acknowledges, and church doctrine and membership documents in the record acknowledge that Mr. West agreed to be subject to church discipline. And in the Lutheran Church Missouri Synod, this means that the pastor has an affirmative duty to address what he believes is sinful conduct in the congregation. You may agree or disagree with that approach to religious practice, but that's what Matthew 18 says. Matthew 18 does not say, if you think your brother sins, you will take him aside and talk to him, but not hurt his feelings, and make sure that he's not going to have a stroke. That's not what it says. It says that you will take him aside, you will then get the congregation or others involved, and then if he is not repentant, you will treat him as a tax collector. This is not a real friendly doctrine, and frankly it's not my religious preference, but that is how the Missouri Synod practices interpersonal relationships. And when you look at the record in this case, you have to start with that premise. You have to understand that that is the role of the pastor, and that's what the plaintiff accepted. Secondly, he has to rewrite the depositions. Yes, Pastor Cassidy suggested in his letter, which is the only thing it issued in the complaint, in his initial letter that Mr. West had been disruptive, and had misled people in the congregation, and if you want to say it called him a liar, I guess it did. But that letter, if you look at the complaint, in paragraph 25, Mr. Wren alleged that the pastor published that letter, shared that with the congregation. Well, we went through days and days of deposition testimony, and that's not what happened. Mr. West acknowledges that when he got the letter, it was Mr. West who took the confidential letter and went to the congregation and shoved it under the nose of anybody he could find. He's the one who published the letter, not the pastor. That's uncontroverted. The pastor's testimony is identical. So there is no testimony in this case that Pastor Cassidy went to the congregation and spread alleged falsehoods about Mr. West. He gave Mr. West a confidential letter. Mr. West decided to take it to the stump. The third thing that has to be rewritten is the complaint. The complaint was very artfully drafted and survived motions to dismiss because the complaint alleged certain things. And what it alleged on intentional infliction of emotional distress was the direct contact between the pastor and the plaintiff. When we get into the depositions and when we get into the facts, we learn that sometime later it is alleged that the pastor called the plaintiff a thief at a church meeting, at a church council meeting where they were discussing church finances. The only evidence of that in the record is a hearsay statement in Mr. West's own... Actually, it's in the response to the summary judgments the first time it appears. It's clearly hearsay. The court didn't strike that portion as hearsay because of something, but here's the significant thing. That allegation is nowhere in the original complaint. So in terms of when you look at the pleadings, we've never responded to it. It would be a defamatory statement if it occurred, unless it was in some sort of privileged context where they were discussing church finances, and that record never got developed because that wasn't the complaint at the time we went through discovery. But the simple fact is that even if that was untrue and libelous or slanderous, it would be barred by limitations because it occurred more than one year before the complaint was filed. So to me, it is a complete non-issue. So with respect to the plaintiff, the real problem is that when we went through discovery and depositions were taken and documents exchanged, the scenario alleged in the complaint, which I think is pretty thin and I frankly didn't think got there to begin with, but I lost on that issue, kind of evaporated because it was Mr. West who acknowledged that the confidential letter from the pastor was something that West published. And there was never in any pleading in this case an allegation that he was accused of thievery. That for the first time appears in his summary judgment affidavit after the fact, but it's too little, it's too late, and even if it were injected into the complaint, there's never been a request to amend the complaint, the objection would be that is a defamatory statement and is barred by limitations. So for these reasons, we respectfully think that the trial court should be affirmed that Mr. West cannot recover for what for him was largely self-inflicted emotional distress and that all parties at this point can go forward and get on with their lives instead of dwelling on this history. Does the court have any questions? Thank you. Thank you, Mr. Robertson. Mr. Unrath, good morning. Good morning. I apologize to the court, I'm coming off a case of the flu. My voice comes in and out of operation sometimes unexpectedly. A plaintiff claims that Reverend Cassidy lied about him to the congregation. Now, I suppose you could say that he's claiming that Reverend Cassidy bore false witness against his neighbor, but I don't think we need to go that far. Mr. Wren is correct when he says that there are certain cases that can be decided with neutral tort principles, that we need not always delve into religious dogma or the operation of the church in order to resolve a case. If Reverend Cassidy had hit Mr. West with a pipe in the parking lot, certainly religious principles would not apply. But the claim against the Missouri Synod is different. There is no claim that the Synod defamed anyone or took any direct action against Mr. West. The claim is for negligent retention. What they're saying is that somebody at the Synod, based on Mr. Cassidy's prior conduct, should have fired that guy. Should have done it a long time ago, and didn't. I look at some of the comments that I've heard on the news about Pat Robertson, those comments about the people of Haiti being cursed by the devil, or by God, or whatever, and I think, yeah, I'd like to see that guy fired. But this is one area where our courts will not delve into. The composition of a church hierarchy, the church's ability to select its own ministers, is at the core of our religious freedoms. It underlies the very basis of our society. The reason we came to this land was to avoid religious tyranny. The moment government steps in and starts telling churches the criteria that they must use to hire or fire clergy members, we have crossed a perilous margin. At that point, the First Amendment ceases to have any meaning at all. Now, there is an exception to this rule. Employment-related decisions are oftentimes brought under Title VII, so there is a vast body of case law of employment-related decisions against churches, and they have what they call a ministerial exception. They will not come anywhere near an action against a clergy member for employment-related. They don't care what the reason was, what subjective reasons they used. No matter how improper their hiring or firing decision is, our courts will not get involved, except for one thing – sexual assault. And that is one exception I can live with. Sexual assault, when it gets involved in employment decisions, is no bar to our courts enforcing employment-related laws. In the end, the right to choose our ministers without government restriction underlies the entire well-being of the religious community. When plaintiffs say that the Missouri Synod should have fired him, should have fired Reverend Cassidy, you're asking the courts to second-guess his allegation that the Synod actually decided not to fire this individual. That is a gross violation of the Establishment Clause of the First Amendment. Now, the Gabriel decision that I raised in my brief is perhaps the most important case. It emanates from the Fourth District, and that decision makes clear that it is when dealing with questions of employment decisions involving clergy. It is immaterial whether the subjective employment decision involved religious doctrine. It makes no difference. Merely getting yourself involved with the decision is an intrusion on the religious liturgy. Finally, I'd like to talk about the relationship between the Missouri Synod and the Mount Calvary Church. It is a complex relationship, particularly since we have a district organization in between the two. I don't pretend to understand the complexities of the organization, but there are a number of key facts that are absolutely undisputed. The Synod has absolutely no role in hiring or firing a minister. That is done solely by the congregation, and that is 100% undisputed. That fact undercuts any argument for a claim for negligent retention. If there are no further questions, my voice is just about out. Thank you. Thanks, Mr. Unruh. Mr. Wren, rebuttal. In response, I guess I'll sort of take it backwards here, what's precious to my mind. There's a fine line between, and that's what we deal with, that's what you guys do for a living is the old fine lines, but we haven't asked that the minister should be fired. We have a negligent retention claim, okay? It's negligence. It's just like if there was a downspout that was bringing water in front of the stairs in the church, and a person comes in and slips and falls there, that's an unnatural accumulation of ice. They're responsible for their negligence and any damages that their negligence requires. The court doesn't come in and order a church, you need to get rid of the downspout. If there's negligence that causes the injury, and there's damages as a result of that, the court provides a remedy. What we have is they knew they had a minister that could cause harm. They left him in place. They are responsible for damages if they knew about that particular harm, and that particular harm caused damages. We don't need to get into church doctrine. As far as Mr. Robertson, I think he said that, well, as far as a ministerial exception, again, that doesn't apply, I think he said, except for sexual assault. I don't know. Let's say the minister started to beat up whoever it is that was late in the hallelujah chorus every week. I mean, would that person, if they did it and kept doing it every week, I mean, would sometime you say, well, the court can step in, or no, that doesn't deal with sexual assault, so we don't do anything. This is what it is. He had a dangerous propensity to hurt people by making false accusations, and, in fact, Mr. West had a stroke right after that happened. As far as the basis of the summary judgment is not the sufficiency of evidence or what was provided. The basis of the evidence was the First Amendment. We're on base because of the First Amendment. You don't have jurisdiction over us. That was their argument. I believe it's their burden to show how the First Amendment comes into play and keeps the court from making a decision. Where is it that they have some doctrine? Where is it that a court deciding that it was negligent to retain this person and there was damages because of that establishes a religion? As far as Mr. Robertson's statements about, and I did read while I was back there, I was sort of halfway listening and halfway going through my complaint. It does say just generally falsehoods in the second count, and we would argue that that would be falsehoods where he's called a liar and also falsehoods where, like I said, in the deposition, it's not a surprise the last minute the deposition was taken five or six years ago, I don't know how long ago, where Mr. West said he was charged with stealing property by the minister just about two weeks before he had the stroke. And also there's an also allegation in count one about being called a liar in the letter and also it says that there was statements of falsehoods about the budget by the minister. I don't believe that, I believe that what we would prove is consistent with the allegations of the complaint and that clearly the First Amendment does not bar the court from having jurisdiction. The final thing was there was a note about hearsay. The trial court actually specifically found that that was not hearsay in regards to the statement by the minister that Mr. West had stolen property, and that was in the second supplement. We supplemented the record a couple times on this one, but there is a supplemental ruling specifically on that issue. Any questions? Thanks, Mr. Wren. Thank you. We thank all of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.